So Ordered.

Signed this 27 day of April, 2026.



_____

Wendy A. Kinsella
United States Bankruptcy Judge

**THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | **For Publication (WO)**<br>Chapter 11 |
| Vanderbilt Minerals, LLC,[1] | Case No. 26-60110 (WAK) |
| Debtor. | |

**MEMORANDUM DECISION AND ORDER ON APPLICATION TO**
**EMPLOY AND RETAIN JONES DAY**

Before the Court is the Retention Application[2] for Jones Day ("Jones Day" or the "Firm")

as proposed counsel for the Debtor that seeks authorization for employment under 11 U.S.C. §§

327(a) and 330.[3] The United States Trustee (the "UST") filed the UST Objection[4] and the Official

---

[1] The Debtor is Vanderbilt Minerals, LLC (EIN 13-1432885). The Debtor's noticing address in this chapter 11 case is 33 Winfield Street, Norwalk, Connecticut 06855.

[2] *Application to Retain and Employ Jones Day as Counsel for the Debtor and Debtor in Possession* (the "Jones Day Retention Application" at Doc. 115).

[3] Unless otherwise indicated, all sectional references are to Title 11 of the United States Code and shall be referred to as the "Bankruptcy Code."

[4] *United States Trustee's Omnibus Objection to the Proposed Retentions of: (I) Jones Day as Counsel for the Debtor; (II) Bond, Schoeneck & King, PLLC as Co-Counsel to the Debtor; (III) Applied Business Strategy, LLC to Provide a Chief Restructuring Officer for the Debtor, and Designating Dean Vomero as the Debtor's Chief Restructuring*

1

Committee of Unsecured Creditors (the "UCC") filed the UCC Objection[5] (collectively, the "Retention Objections").  Subsequently the Debtor filed the Jones Day Reply in further support of the Retention Applications and in response to the Objections.[6]

Pursuant to a *Notice of Hearing Concerning Applications to Employ and Retain Certain of the Debtor's Professionals* (Doc. 173) and Text Order of the Court (Doc. 255), a hearing was held on various professional retention applications on April 9, 2026 (the "Hearing")[7]. At the Hearing, the Court approved the Debtor's retention of Bond Schoeneck & King, PLLC, Katten Muchin Rosenman LLP, Greenhill & Co., LLC and Kurtzman Carson Consultants, LLC dba Verita Global, and approved Applied Business Strategy LLC's Retention Application over the UST Objection. The Court adjourned the Hearing to April 14, 2026, allowing additional supplements to be filed,[8] and thereafter issued its oral ruling denying approval of the Jones Day Retention Application.  The Court advised that a written decision would be issued to memorialize its ruling.

---

*Officer; (IV) Katten Muchin Roseman LLP as Counsel to the Debtor at the Sole Direction of the Independent Manager and Sole Member of the Independent Special Committee of the Debtor; (V) Greenhill & Co., LLP as Investment Banker to the Debtor; and (VI) Kurtzman Carson Consultants, LLC d/b/a Verita Global as Administrative Advisor* (the "UST Objection" at Doc. 223).

[5] *Objection of the Official Committee of Unsecured Creditors to the Application to Retain and Employ Jones Day As Counsel for the Debtor and Debtor In Possession* (the "UCC Objection" at Doc. 225) (collectively, with the UST Objection, the "Retention Application Objections").

[6] *Debtor's Reply in Support of Debtor's Application to Retain and Employ Jones Day as Counsel for the Debtor and Debtor in Possession* (the "Jones Day Reply" at Doc. 280) and *Supplemental Declaration of Heather Lennox in Support of the Application to Retain and Employ Jones Day as Counsel for the Debtor and Debtor in Possession* (the "Supplemental Lennox Declaration" at Doc. 281, collectively, the "Jones Day Reply").

[7] Prior to the Hearing, the UST filed a letter (Doc. 317) resolving objections to the retention of: 1) Bond, Schoeneck & King, PLLC, 2) Katten Muchin Rosenman LLP, 3) Greenhill & Co., LLC and 4) Kurtzman Carson Consultants, LLC d/b/a Verita Global. The objections to the Jones Day Retention Application and ABS Retention Application remained outstanding.

[8] *See Motion to Supplement the Record* (Doc. 346); *Order Granting Motion to Supplement the Record* (Doc. 373); *Debtor's Notice of Supplemental Record* (Doc. 381); *Sealed Document* (Doc. 382).

## I.      Jurisdiction

The Court has jurisdiction to hear and decide these cases pursuant to 28 U.S.C. §§ 1334 and 157. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409, and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## II.     Background

The Court assumes the parties' familiarity with the general background of the bankruptcy case and will only set out the facts necessary for a resolution of the Jones Day Retention Application and the Retention Objections.

The timeline of events and current posture of the case are critical to the analysis. Beginning in 2011, Jones Day represented R.T. Vanderbilt Co. ("RTVC") and subsequently assisted in a corporate restructuring transaction that led RTVC to split into several entities, including the Debtor and the Debtor's parent, R.T. Vanderbilt Holding Company Inc. ("Holdings"). *See Supplemental Lennox Declaration*, at ¶ 4. After that restructuring, Jones Day represented the Debtor, Holdings, and certain of its non-debtor affiliates in connection with corporate and corporate governance matters. *See, e.g.*, *Lennox Declaration*, at ¶¶ 10, 17.[9]

In addition to Jones Day's historic representation of Holdings and its' affiliates, the Firm represented those companies on two specific projects leading up to the current filing.  In October 2024 the Firm was retained by the Debtor, Holdings and Vanderbilt Chemicals, LLC ("Chemicals") in connection with a potential transfer of the VEEGUM® processing facility from Chemicals to the Debtor. *Supplemental Lennox Declaration*, at ¶ 5. That "restructuring of ownership of the VEEGUM® Facility" never occurred. Thereafter, in the spring of 2025, Jones Day represented the Debtor and various affiliates in a historical global netting process (the "Global

---

[9] The *Declaration of Heather Lennox in Support of the Application to Retain and Employ Jones Day as Counsel for the Debtor and Debtor in Possession* was filed in support of the Jones Day Retention Application (the "Lennox Declaration" at Doc. 115-3).

Netting") which resulted in a $127,292,745 due from Holdings to the Debtor to be reconciled and offset against other balances owed by the Debtor to various affiliates.

Throughout the time of its involvement with Jones Day, the Debtor had been managing talc litigation and claims until a $12.5M verdict was rendered against it in August 2025. *See Declaration of Dean Vomero, the Chief Restructuring Officer of Debtor Vanderbilt Minerals, LLC in Support of First Day Motions of Debtor and Debtor in Possession* (Doc. 3), at ¶ 54. In September 2025, Jones Day was engaged by the Debtor as bankruptcy counsel and its representation of Holdings and the non-debtor affiliates concluded. *See Supplemental Lennox Declaration*, at ¶ 7. At that time, the Debtor was facing more than 1,400 cases, with over 150 cases scheduled for trial in 2026. *See Declaration of Dean Vomero in Support of the Debtor's Objection to the Committee's Motion to Dismiss the Chapter 11 case* (Doc. 305), at ¶ 7.

After the case was commenced on February 16, 2026, the Debtor immediately filed the DIP Motion seeking authority to obtain debtor-in-possession financing to fund Debtor's day-to-day operations, preserve relationships, continue to market assets and preserve value and pay the costs associated with this case.[10]  The Debtor also filed the Sale Motion seeking entry of an order approving bidding procedures, authorizing the Debtor to enter a Stalking Horse Agreement, scheduling an auction, and authorizing the sale of the Debtor's assets.[11]

---

[10] *Motion of the Debtor and Debtor In Possession Pursuant to Sections 105, 362, 363, 503, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004 and 9014 and Local Rules 2002-1, 4001-2 and 9013-1 for Interim and Final Orders (I) Authorizing the Debtor to Obtain Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing and (V) Granting Related Relief* (the "DIP Motion" at Doc. 17).

[11] *Motion of the Debtor and Debtor in Possession for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Substantially all of the Debtor's Assets, (B) Authorizing the Debtor to Enter into the Stalking Horse Agreement and to Provide Bidding Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (F) Granting Related Relief; and (II)(A) Approving the Sale of the Debtor's Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* (the Sale Motion" at Doc. 16).

On the same day, the "third leg" of the "three-legged stool" was filed, the highly contested Settlement Motion.[12]   The Settlement Motion was filed by Ben Pickering, the Independent Manager and Sole Member of the Independent Special Committee of the Debtor, who was engaged by the Debtor to act as a fiduciary, with Katten Muchin Rosenblum LLC "(Katten)" serving as his counsel.  The Settlement Motion seeks approval of a global settlement (the "Global Settlement"), wherein the Debtor gives broad releases of certain intercompany claims against Holdings and other affiliates in exchange for their transfer of various assets to the Debtor to facilitate a sale of Debtor's assets as a going concern under section 363 of the Bankruptcy Code.[13]

## III.    Arguments

The Retention Objections assert that in light of the timeline above and Jones Day's prior relationships with Holdings and the other non-debtor affiliates, the Firm has extensive knowledge and bias about the settlement and may have divided loyalties, thereby disqualifying the Firm from representing the Debtor under section 327(a) of the Bankruptcy Code.  The UST contends "The appearance of a conflict is undeniable given the prior relationship Jones Day had with Holdings." *UST Objection,* at p. 17.  The Firm has a fiduciary duty to "maximize [Holdings'] and its affiliates (if applicable) contributions to the Debtor's coffers – in exchange for the releases – and by implication to maximize [Holdings'] and its affiliates share of the liability." *Id.*  This duty presents a conflict because of Jones Day's "capacity as current and former counsel and professionals to [Holdings] and its affiliates, to minimize those same liabilities to the Debtor." *Id.*  In addition, the UST asserts Jones Day has failed to provide clear and candid disclosures of its connections to the Debtor and the Debtor's affiliates under Bankruptcy Rule 2014(a) and "make[s] no mention of the

---

[12] *Motion of the Debtor at the Sole Direction of Independent Manager and Sole Member of the Independent Special Committee of the Debtor for Entry of an Order (I) Approving the Global Settlement Between the Debtor and R.T. Vanderbilt Holding Co., Inc. and Certain of Its Subsidiaries; and (II) Granting Related Relief* (the "Settlement Motion" at Doc. 22, collectively, with the DIP Motion and Sale Motion, are the "Motions").
[13] The Settlement Motion was subsequently approved by the Court on April 22, 2026.

specific payments received and the invoices sent by them for the services that they performed."
*See UST Objection*, at pp. 16–18.

The UCC also objects to the Debtor's retention of Jones Day as counsel, sharing the same concerns of the UST. *See UCC Objection*, at ¶ 1. Arguing that "[t]he receipt of releases for [Holdings] is a (if not the) central objective of this bankruptcy," the UCC alleges that Jones Day has a current and ongoing conflict of interest as "Jones Day was entangled in the very matter that the Settlement Motion contemplates, and in which the Debtor now finds itself directly adverse to [Holdings]." *Id.* at ¶¶ 5, 20. The UCC further argues that the Firm's prior representation of Holdings results in disqualification due to a lack of disinterestedness. *Id.* at ¶ 38. Citing to *Black & White Stripes,* the UCC asserts that "[e]ven if Jones Day's representation of Vanderbilt has concluded . . . the scope of the proposed retention is such that it is vital that there be no doubt as to the faithfulness of counsel to the bankruptcy estate." *Id.* at ¶ 43 (citing *In re Black & White Stripes, LLC*, 623 B.R. 34, 52 (Bankr. S.D.N.Y. 2020)).

Jones Day counters that the Debtor is entitled to retain counsel of its choice. *See* Jones Day Reply, at ¶ 12. The Firm's representation of Holdings and the non-debtor affiliates concluded September 1, 2025, and it has represented only the Debtor since that time. *Id.*, at ¶ 19. The prepetition termination of its representation of the non-debtor affiliates is sufficient to satisfy the requirements of section 327(a) because the Firm does not presently hold or represent an interest that is adverse to the estate, and it is otherwise disinterested. *See id.*, at ¶¶ 24–29.  Jones Day contends the disinterestedness requirement only relates to the personal interests of the proposed professional and prior representations do not impact that analysis. *See id.*, at ¶¶ 30–31.  Moreover, with Mr. Pickering appointed as an independent fiduciary for the Debtor with Katten representing him, the Firm has not been involved in any manner with the Settlement Motion. *See id.*, at ¶¶ 40–

44. Therefore, its prior representation of Holdings and the other settlement parties does not warrant disqualification.  Jones Day also clarified only the Debtor made payments to the Firm in connection with this case.  In light of the above, Jones Day maintains the Retention Objections should be overruled.

### a.  The Hearing

At the Hearing, the Court heard testimony from Heather Lennox, Esq. ("Ms. Lennox"), a partner at Jones Day.  During her examination by the UCC, Ms. Lennox testified that Jones Day had worked on several projects over the years with Holdings beginning in 2011. These projects included the corporate restructuring in 2012-2013 and the two transactions with the Debtor described above, the Global Netting transaction and the potential transfer of the VEEGUM®[14] facility from Chemicals to the Debtor.  Much of the testimony discussed the nature of these transactions, the involvement of Jones Day, and the effect they had on the Debtor, talc liabilities, and talc claimants. Ms. Lennox conceded that these transactions were not disclosed on Jones Day's original Retention Application, and that the Settlement Motion would allow for the transfer of the VEEGUM facility to the Debtor.

During cross-examination, Ms. Lennox stated that these prior engagements did not result in Jones Day possessing an adverse interest, or make the Firm an interested party warranting disqualification. Further, Ms. Lennox testified that Jones Day did not have a present interest in Holdings or the non-debtor affiliates and characterized the Firm's representation regarding the failed VEEGUM® facility transfer as complete.

---

[14] The VEEGUM® facility is currently owned by Chemicals but based on the approval of the Settlement Motion, should be transferred to the Debtor.

## IV.    Legal Analysis

### a.    327(a) Standard

Section 327(a) of the Bankruptcy Code authorizes the debtor in possession to employ professionals to represent the estate during bankruptcy with court approval, and specifically provides:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons*, that do not hold or represent an interest adverse to the estate, and that are disinterested persons*, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a) (emphasis added).

"When evaluating proposed retention, a bankruptcy court 'should exercise its discretionary powers over the approval of professionals in a manner which takes into account the particular facts and circumstances surrounding each case and the proposed retention before making a decision.'" *Vouzianas v Ready & Pontisakos* (*In re Vouzianas*), 259 F.3d 103, 107 (2d Cir. 2001) (quoting *Bank Brussels Lambert v. Coan* (*In re AroChem Corp.*), 176 F.3d 610, 621 (2d Cir. 1999); 3 Lawrence P. King, et al., *Collier on Bankruptcy*, ¶ 327.04[1][a] (15th ed. rev. 1998)). "Relevant considerations are 'the protection of the interests of the bankruptcy estate and its creditors, and the efficient, expeditious, and economical resolution of the bankruptcy proceeding." *Id.* (internal quotations omitted); s*ee also In re Vebeliunas*, 231 B.R. 181, 194–95 (Bankr. S.D.N.Y. 1999) (holding that Section 327(a) vests discretion in bankruptcy courts to disapprove trustee's choice of special counsel not only for conflict of interest but also for other reasons serving the best interest of the estate).

The general test is for professionals to "(1) hold no *interest adverse* to the estate; and (2) be *disinterested persons*." *In re Vouzianas*, 259 F.3d at 107 (emphasis added). While not defined in the Bankruptcy Code, the Second Circuit has adopted the definition of "hold or represent an

8

adverse interest" to mean: "(1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate." *In re AroChem Corp.*, 176 F.3d at 623 (citations omitted). Section 101(14) defines "disinterested person" as an individual who "(C) does not have an interest materially adverse to the interest of the estate . . . by reason of any direct or indirect relationship to, connection with, or interest in, the debtor . . . ." 11 U.S.C. § 101(14)(C).

Courts have commonly held that "[t]he test is not retrospective; courts only examine present interests when determining whether a party has an adverse interest." *In re JMK Constr. Grp., Ltd.*, 441 B.R. 222, 229 (Bankr. S.D.N.Y. 2010). While the standard of looking to present interests, rather than past, stems from the Second Circuit's ruling in *AroChem*, it has been expanded upon in recent case law. For example, the Court in *Black & White Stripes* disqualified counsel for a prior representation of the debtor's principals in a state court action. *See In re Black & White Stripes, LLC*, 623 B.R. at 52; *c.f. In re Vouzianas*, 259 F.3d at 108 ("Pryor contends that the bankruptcy court erred because it failed to apply the two-part test of Section 327(a) to the retention of Ready as special counsel. According to the trustee, the bankruptcy court's scrutiny of the special counsel nominee is limited to determining adverse interests and disinterest. Clearly, the bankruptcy court is not so limited in its oversight of the trustee's actions."). Judge Glenn in Black & White Stripes noted that "part of what made the representation at issue in *AroChem* permissible was the scope of representation for which the Firm was retained *in the bankruptcy case*." *Id.* at 52. "In *AroChem*, the special litigation counsel was retained to pursue the same narrow issues it had already pursued on behalf of the creditor. It was not retained to represent all of the debtor's interests." *Id.* (noting, as a further distinction, that *AroChem* was a chapter 7 case). Highlighting

9

the need for the Debtor to have "reliable bankruptcy counsel to help shepherd the Debtors through the chapter 11 process and to faithfully proceed on their behalf in marshalling estate assets and pursuing any claims that the Debtors may have," the Court in *Black & White Stripes* ultimately disqualified counsel. *Id.*

Jones Day argues that the facts here are readily distinguishable from those in *Black & White Stripes* as "the proposed counsel had represented both the debtor and the debtor's principals in prepetition litigation – which is not the case here," and "debtor had not appointed an independent estate fiduciary with independent counsel to address any potential claims or causes of action between the debtor and its principal." *See Jones Day Supplement*, at ¶ 31. The Court acknowledges these differences, but nevertheless finds enough similarities between *Black & White Stripes* and this case to follow Judge Glenn's holding that prior employment may be grounds for disqualification.

This Circuit places great deference on the right of a debtor to retain its choice of counsel, and the Court does not take a request for disqualification lightly. *See In re Enron Corp.*, No. 01-16034(AJG), 2002 WL 32034346, at *4 (Bankr. S.D.N.Y. May 23, 2002), *aff'd*, No. 02 CIV. 5638 (BSJ), 2003 WL 223455 (S.D.N.Y. Feb. 3, 2003); *In re Bennett Funding Grp., Inc.*, 213 B.R. 234, 250 (Bankr. N.D.N.Y. 1997). The Court is also aware that Jones Day's institutional knowledge regarding the background of the Debtor, its operations and financial situation is beneficial to the Debtor and may impact the efficiency of this case, and the Firm's continued involvement would avoid a steep learning curve that would be faced by other counsel. Given the extremely tight timeframes involved with the pending Motions, those factors weigh in favor of approving Jones Day's retention.

10

These time frames, however, also weigh against the retention of Jones Day.  The Firm represented only the Debtor for bankruptcy work beginning in September 2025.  The Debtor filed the DIP Motion, the Sale Motion and the Settlement Motion only five months from the conclusion of its decade-long representation of Holdings and the non-debtors, and agreed to the extremely short timelines in those Motions.  Although an expeditious resolution of a bankruptcy case is preferable, the Court nevertheless recognizes the UCC's concerns that the short timeframes that led to the time crunch facing all parties may be of the Debtor's own purposeful making.

The Court also emphasizes that the bankruptcy process is one that places great importance on open and transparent disclosures, and this is continued in retention applications; "[t]he court relies primarily on forthright disclosure to determine qualification under section 327."  *In re Granite Partners, L.P.*, 219 B.R. 22, 35 (Bankr. S.D.N.Y. 1998); *In re Enron Corp*, 2002 WL 32034346, at *5.  The Court has concerns over Jones Day's lack of disclosures that were brought to light by the UCC; however, it understands the Firm's lengthy history with the Debtor's predecessor, the Debtor itself, and the non-debtor affiliates may make detailed disclosures of 15 years of representation cumbersome.  Nevertheless, the Court is troubled by the initial omissions of significant transactions in the two years leading up to the filing, as Jones Day simply disclosed it "historically" represented Holdings and the Debtor's affiliates in general corporate and corporate governance matters before September, 2025. *See, e.g.*, *Lennox Declaration*, at ¶ 17.  The Firm failed to mention it advised Holdings, the Debtor and affiliates on the Global Netting transaction and the potential transfer of the VEEGUM® plant.[15] Despite assurances that those and all other intercompany matters were investigated by Mr. Pickering without Jones Day's involvement, which this Court has no reason to doubt, the fact that the Firm advised on those transactions is

---

[15] Although Jones Day claims the Debtor was still actively managing its talc liabilities at that point, given the tremendous increase in those liabilities, it is reasonable to assume the restructuring contemplated a bankruptcy filing.

problematic.  Jones Day contends the Global Netting was an accounting exercise, and this may very well be true.  The Firm also submits that the Debtor was solvent when it engaged in those setoffs which may also be accurate.  But the Court should not have to evaluate the merits or the propriety of those transactions and the solvency or insolvency of the Debtor to find the Firm free from conflicts, or at least a considerable perception of conflicts. *See, e.g., In re Black & White Stripes, LLC*, 623 B.R. at 51 ( "[t]he determining factor is whether counsel sought to be retained can proceed faithfully on behalf of the Debtors and in the best interests of the estate").

In addition, the Debtor through Jones Day, and not Mr. Pickering, is pursuing a section 363 sale of the VEEGUM® plant upon its transfer to the Debtor through the Global Settlement.  Jones Day represented Holdings, the Debtor and Chemicals in reviewing the potential for that transfer to the Debtor in late 2024, which never occurred.  It is irrelevant if there were legitimate business reasons for that transaction not taking place.  Again, the Court should not have to investigate the facts underlying the potential transfer to find the Firm to be free from conflicts, or the appearance of conflicts.  The parties will never know if Jones Day made recommendations that benefited Chemicals or Holdings over the Debtor and then moved to the Debtor's side of the table.

The long history between Jones Day and incarnations of this Debtor and Holdings goes back more than a decade, beginning in February 2011. *See Supplemental Lennox Declaration*, at 34¶ 4.  Jones Day has detailed knowledge of the behind-the-scenes discussions, information exchanged and decision-making process that took place.  It is unknown if the Firm's advice in those transactions resulted in a disadvantage to the Debtor—nor would the Court expect Jones Day to disclose its advice on those transactions that are protected by the attorney-client privilege. Notwithstanding these two matters that have been focused on the parties, the long-term relationship, knowledge, strategizing and influence that Jones Day had with, and over, Holdings

and the other non-debtor affiliates during its time as their counsel cannot be ignored. *See In re Leslie Fay Companies, Inc*., 175 B.R. 525, 532 (Bankr. S.D.N.Y. 1994) (noting that section 327 "serve[s] the important policy of ensuring that all professionals appointed pursuant to the section tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities) (citation omitted). Simply stated, the Independent Manager does not fix that problem, nor does he disentangle the relationship that Jones Day had with Holding and its affiliates for over a decade.

Finally, the mass tort scenario facing the Debtor requires the bankruptcy process to be devoid of any appearance of conflict. *See In re Angelika Films 57th, Inc*., 227 B.R. 29, 58 (Bankr. S.D.N.Y. 1998), *aff'd*, 246 B.R. 176 (S.D.N.Y. 2000) ("The duty to avoid even the appearance of impropriety is a persistent theme in disinterestedness cases"). There are over 1,400 known talc claimants in this case. *See Declaration of Dean Vomero, the Chief Restructuring Officer of Debtor Vanderbilt Minerals, LLC, in Support of First Day Motions of Debtor and Debtor in Possession* (Doc. 3), at ¶ 53. These are not traditional business creditors, but creditors who face significant health issues and even death, allegedly as a result of the Debtor's operations. They must rely on the Debtor and its counsel to have undivided loyalty and diligently work to maximize the value of the estate in order to attain any form of monetary relief. That reliance is the only way this case will be able to progress, which is not possible with Jones Day at the helm.

The Court is not questioning the competence or integrity of Jones Day, Ms. Lennox or any of its professionals. The Court recognizes that simultaneous representation of corporate affiliates outside of the bankruptcy context is commonplace. The resignation of Jones Day as counsel for the affiliates and retention by only the Debtor is also a common scenario when a bankruptcy filing becomes probable. In addition, the Debtor, with Jones Day's support, may have taken the

13

appropriate steps to appoint Mr. Pickering as a fiduciary to review all of the Debtor's and the Debtor's affiliates' transactions. The Court has no reason to believe that the Global Settlement was not crafted by Mr. Pickering, or that Jones Day was not isolated from that investigation and settlement negotiations.  But under the circumstances of this case, these matters cannot be so easily compartmentalized. The timeline demonstrates Jones Day was actively representing the Debtor's affiliates while exploring and recommending legal strategies and actions that may have negatively impact this estate, including, and perhaps not limited to, setoffs and potential asset transfers. The Court should not have to assess the merits and propriety of those transactions to find Jones Day without conflict.

As the court in *Angelika Films* noted:

The determination of adverse interest is objective and is concerned with the appearance of impropriety. *See Rome,* 19 F.3d at 58 (noting that "[t]he test is neither subjective, nor significantly influenced by the court-appointed professional's 'protestations of good faith,' ... but contemplates an objective screening for even the 'appearance of impropriety' "). The duty to avoid even the appearance of impropriety is a persistent theme in disinterestedness cases. It is also stated in the New York Code of Professional Responsibility, Canon 9. *See Granite,* 219 B.R. at 34. Several courts have argued that the disinterestedness requirement was intended to "prevent even the appearance of conflict irrespective of the integrity of the person or firm under consideration." *Martin,* 817 F.2d at 180–81 (*quoting, Codesco,* 18 B.R. at 999.) The court in *Rancourt,* 207 B.R. 338, 359 (Bankr.D.N.H.1997), went so far as to say that, because "section 327(a) is designed to limit even appearances of impropriety to the extent reasonably practicable, doubt as to whether a particular set of facts gives rise to a disqualifying conflict of interest normally should be resolved in favor of disqualification."

*In re Angelika Films 57th, Inc.*, 227 B.R. at 38.

Here, Jones Day is so intertwined with the Debtor's affiliates that it creates a clear appearance of impropriety and divided loyalties. If retained as counsel, there would be continuous doubts about whether Jones Day possessed a predisposition that rendered a bias against the estate and whether the Firm could carry out its fiduciary duty to maximize the Debtor's recovery for the

benefit of the estate and its creditors, thereby undermining the Firm's ability to perform as faithful bankruptcy counsel. *See Black & White Stripes*, 623 B.R. at 52.  Indeed, approving the retention would compromise the integrity of the bankruptcy process, which the Court is not willing to do.

## V.  Conclusion

Based on the record before it, the Court sustains the UST Objection and UCC Objection and denies the Jones Day Retention Application.

###